IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BOBBY WILLISON :
:
v. : Civil No. CCB-09-1687
:
PRABHAKAR PANDEY, M.D., *et al*. :
:
...o0o...

# MEMORANDUM

Bobby Willison has sued Dr. Prabhakar Pandey, M.D. and the Western Maryland Health System (WMHS), alleging that Dr. Pandey was negligent in connection with surgery in March 2006 during which Mr. Willison's entire right kidney was removed. (Compl. ¶¶9-13.) Dr. Pandey was employed by WMHS at the time when the alleged malpractice occurred. (Motion to Compel Discovery ("MTC"), ECF No. 30, ¶3.) Soon after the alleged malpractice, Dr. Pandey left his employment at WMHS (*id.* ¶4), but maintains privileges at WMHS. (Def.'s Resp. to MTC ¶1.) Pending before this court are three motions filed by the plaintiff: a motion to compel and two motions in limine.

1. *Motion to Compel*

The first motion seeks to compel the production of what the plaintiff describes as "Dr. Pandey's personnel file for the period of time he was with Western Maryland Health System." (MTC ¶2.) Plaintiff's counsel argues the "personnel file" is discoverable because it will show whether "Dr. Pandey was reprimanded or terminated as a result of the alleged malpractice to Plaintiff, and/or other pertinent information regarding Dr. Pandey's practice." (*Id.* ¶5.) WMHS has objected to the request, arguing that (1) to the extent the plaintiff is requesting documents of WMHS's Medical Review Committee ("MRC"), they are protected by Maryland's medical

1

review committee privilege under Md. Code Ann., Health Occ. § 1-401(d), and (2), to the extent the plaintiff is requesting documents other than those of the MRC, the request is "irrelevant, overbroad, seeks information not reasonably calculated to lead to discoverable information, and goes against public policy." (Def.'s Resp. to MTC ¶¶4-6.)

The medical review committee privilege is provided by statute: "Except as otherwise provided in this section, the proceedings, records, and files of a medical review committee are not discoverable and are not admissible in evidence in any civil action." Md. Code Ann., Health Occ. § 1-401(d)(1). A "medical review committee" ("MRC") is defined as a committee or board that "(i) Is within one of the *categories* described in subsection (b) of this section; and (ii) Performs functions that include at least one of the *functions* listed in subsection (c) of this section." *Id.* § 1-401(a)(3) (emphasis added). One of the enumerated "categories described in subsection (b)," the one WMHS argues applies here, is

> A committee of the medical staff or other committee, including any risk management, credentialing, or utilization review committee established in accordance with § 19-319 of the Health--General Article, of a hospital, related institution, or alternative health care system, if the governing board of the hospital, related institution, or alternative health care system forms and approves the committee or approves the written bylaws under which the committee operates;

*Id.* § 1-401(b)(5). The "functions . . . listed in subsection (c)" are the following:

> (1) Evaluates and seeks to improve the quality of health care provided by providers of health care;
> (2) Evaluates the need for and the level of performance of health care provided by providers of health care;
> (3) Evaluates the qualifications, competence, and performance of providers of health care; or
> (4) Evaluates and acts on matters that relate to the discipline of any provider of health care.

*Id.* § 1-401(c).[1] Maryland courts have broadly construed the privilege, explaining that a "fundamental reason for preserving confidentiality in these proceedings is to ensure a high

---

[1] The two exceptions to the privilege, *see id.* § 1-401(e), are not at issue here.

2

quality of peer review activity leading to the primary goal of this legislation—to provide better health care." *St. Joseph Med. Ctr., Inc. v. Cardiac Surgery Assocs., P.A.*, 896 A.2d 304, 314 (Md. 2006) (quoting *Unnamed Physician v. Comm'n on Med. Discipline*, 400 A.2d 396, 403 (1979)).

In response to a request from this court during a telephone conference, WMHS provided two affidavits in support of its position that no documents requested by the plaintiff are discoverable: one from Nancy Adams, the Chief Nurse Executive, and the other from Mark Sullivan, the Vice President for Human Resources. (ECF No. 34.) Adams reviewed the "entire medical staff file of [Dr. Pandey] that is maintained by Medical Staff Services" and states, "There is no information within Dr. Pandey's medical staff file in anyway [*sic*] related to any peer review action concerning Dr. Pandey's treatment of Plaintiff, Bobby Willison." (*Id.* at 1.) Sullivan reviewed the "entire personnel file of [Dr. Pandey] that is maintained by the Human Resources Department" (*id.* at 3), which consists of:

- Standard Human Resources Forms concerning hiring and voluntary resignation
- Electronic correspondence concerning voluntary resignation of Dr. Pandey
- Electronic correspondence concerning Dr. Pandey's return to the Cumberland Area
- Electronic correspondence concerning employment benefits
- Banking information
- Federal forms concerning employment eligibility
- WMHS EEOC form
- Federal and State of Maryland tax withholding forms.

(*Id.* Ex. A.) Sullivan states, "There is no information within Dr. Pandey's personnel file in anyway [*sic*] related to the above-captioned medical malpractice case." (*Id.* at 3.)

The plaintiff has not responded to those affidavits, and thus it is unclear to the court (1) whether the plaintiff is still seeking to compel the production of certain personnel documents, and (2), if so, what documents he believes is entitled to, in light of the medical review committee privilege and the affidavits WMHS filed in December. If the plaintiff continues to seek the

3

production of certain documents in the possession of WMHS, counsel is instructed to clarify the request by September 6, 2011, the current deadline for the next status report. If the plaintiff seeks documents of WMHS's medical review committee, counsel should explain why the plaintiff believes the medical review committee privilege does not apply.[2] If the plaintiff seeks other documents, counsel should explain which types of documents those may be, and of what committee or other entity, and explain why the request is reasonably calculated to lead to discoverable information.

## 2. *Motions in Limine*

The plaintiff's second motion seeks to exclude the testimony of Dr. Myron Murdock, an expert identified by the defense. (Mot. in Limine, ECF No. 42 ("Murdock MIL").) Under Federal Rule of Evidence 702, an expert's testimony is admissible so long as (1) "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," (2) the witness is "qualified as an expert by knowledge, skill, experience, training, or education," (3) "the testimony is based upon sufficient facts or data," (4) "the testimony is the product of reliable principles and methods," and (5) "the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. The plaintiff argues that Dr. Murdock's testimony should be excluded because his testimony is not "based upon sufficient facts or data." Dr. Murdock's expert report and deposition, however, contradict that contention. In the Report of Meritorious Defense that Dr. Murdock provided to the defense on November 19, 2009, he explains that in reaching his conclusion he reviewed and relied on Mr. Willison's medical records. (Def.'s Resp. to Murdock MIL, Ex. C, ECF No. 49-4, at 2-3.) He also cites each of the reasons, specific to Mr. Willison, that led him to conclude that

---

[2] If the plaintiff seeks documents of the MRC, although the court notes that such documents are likely privileged, the court may need additional information from WMHS addressing the category and function prongs of Md. Code Ann., Health Occ. § 1-401(a)(3), before it would be in a position to rule on the motion.

4

Dr. Pandey's decisions were within the standard of care. (*Id.*)  During his deposition Dr. Murdock also explained that he reviewed Mr. Willison's scans (Murdock Dep., ECF No. 42-1, at 7:18), including his x-rays (*id.* at 43:19), CAT scans, and MRI (*id.* at 32:11), as well as the pathology report.  (*Id.* at 24:22-25:3.)  Therefore, the motion will be denied.

The plaintiff's third motion seeks to preclude the defense from cross-examining Dr. Sol Usher, one of the plaintiff's experts, about an ongoing malpractice suit against Dr. Usher in which "it is alleged he failed to make a diagnosis (or diagnosis delayed [*sic*]) of kidney cancer." (Mot. in Limine, ECF No. 48 ("Usher MIL"), ¶1.)  The plaintiff argues that any probative value the testimony might have in this case would be outweighed by "unfair prejudice" and therefore should be excluded under Federal Rule of Evidence 403.  "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.  The defense contends that cross examination of Dr. Usher about the ongoing malpractice suit could carry probative value, because the existence of the lawsuit could bear on his credibility as an expert witness to describe the standard of care, and to assess whether Dr. Pandey satisfied that standard. The issues to be resolved under Federal Rule of Evidence 403 can be better resolved at the time of trial.  Accordingly, this motion will be denied without prejudice.

A separate Order follows.

| Aug. 8, 2011 | /s/ |
| --- | --- |
| Date | Catherine C. Blake |
| | United States District Judge |